advanced, and certainly would not be admitted.

The statement in the contract, the statute, and the certificates, that the "preferred dividends" are to be paid out of the "net earnings," sheds no light, one way or the other, for a solution of the question. The mortgage interest and the delayed coupons are also to be paid out of the net earnings. Net earnings are, properly, the gross receipts, less the expenses of operating the road to earn such receipts. Interest on debts is paid out of what thus remains, that is, out of the net earnings. Many other liabilities are paid out of the net earnings. When all liabilities are paid, either out of the gross receipts or out of the net earnings, the remainder is the profit of the shareholders, to go towards dividends, which, in that way, are paid out of the net earnings. That this is the meaning of the expression "net earnings," in the contract, is shown by the fact, that the contract states that the trustees are to receive the net earnings, and out of them pay the floating debt, and the delayed coupons, and by the further fact, that the contract, the statute, and the certificates state that the mortgage interest is to be paid out of the net earnings, by stating that the preferred dividends are to be paid out of the net earnings, "after payment," (that is, out of the net earnings,) "of mortgage interest."

It results, from these considerations, that the bill must be dismissed, with costs.

[On appeal to the supreme court, the decree of this court was affirmed. 22 Wall. (89 U. S.) 136.]

---

ST. JOHN v. MISSOURI, K. & T. RY. CO. See Cases Nos. 10,767 and 10,768.

ST. JOHN (PLANTERS' BANK v.). See Case No. 11,208.

---

## Case No. 12,227.

ST. JOHN v. PRENTISS.

[See Case No. 2,194.]

---

## Case No. 12,228.

ST. JOHN v. SOUTHERN EXP. CO.

[1 Woods, 612; [1] 10 Am. Law Reg. (N. S.) 777.]

Circuit Court, S. D. Alabama. April Term, 1871.

CARRIERS — LIABILITY FOR LOSS — CONNECTING LINES — CUSTOM — EXPRESS CONTRACT — RULES OF COMPANY—RECOVERY.

1. The reception by an express company of a package for transportation to a point beyond its route, and the receipt of the entire compensation for the transportation to that point, is sufficient to make out a prima facie case of contract to carry and deliver the package to that point.

2. To avoid liability in such case, the company must show a specific contract to carry only to

its own terminus, or a settled and uniform rule not to assume liability beyond that point, which rule must be brought home to the consignor, either by express notice, or by a notoriety so general that he may be fairly presumed to have had notice.

3. Plaintiff delivered a package addressed to a consignee in New York, to defendant, an express company in Mobile, paid the freight for the entire distance and took a receipt, stating that "this company is to forward the same to its agent, nearest or most convenient to destination only, and then to deliver the same to other parties, they to complete the transportation; such delivery to terminate all liability of the company for such package." The company's route extended only to Lynchburg, but it had an arrangement with the Adams Express Company to transport such packages to any point on the latter's route, and receive a pro rata share of the freight: *Held*, that the Adams Express Company was the agent of defendant, within the terms of the receipt, and defendant was liable for failure to deliver in New York.

4. If an express company has a settled and uniform rule that money packages must be sealed and indorsed in a certain way, and such rule is brought home to the knowledge of the consignor, who neglects or intentionally omits to comply with it, and the company in ignorance of the special value of the package, takes ordinary care of it only, the company will not be liable for the loss.

5. If, however, the money is stolen by an agent of the company, and the company recovers the money from the thief, it will be liable for the amount so recovered, upon a count for money had and received, notwithstanding the violation of its rules by the consignor.

The evidence tended to prove this state of facts: After the close of the late War of the Rebellion, the postal service between the Northern and Southern states was considered unreliable, and the defendant, the Southern Express Company, having an office in Mobile, was largely employed in the conveyance of letters. These were required to be put up in stamped postal envelops, and the uniform charge on all letters, not containing money, for their conveyance for all distances within the United States was twenty-five cents. When the superscription did not indicate that the letter contained money, it was sent, on reaching its destination, to the post office for delivery. But when the superscription indicated that the letter contained money, it was delivered to the person to whom addressed and his receipt taken. The charge for the transmission of a money letter was four dollars per thousand dollars inclosed, and the rules of the company required the amount inclosed to be stated on the envelop, and that the envelop should be sealed in a prescribed way. The defendant's route extended only to Lynchburg, but it had an arrangement with Adams Express Company to transport packages to any point on the latter's route, and receive a pro rata share of the freight, and it was the practice of the defendant company to deliver to the Adams Company at Lynchburg, packages under this agreement. An attempt was made to bring home to the plaintiff a knowledge of these rules and practices of the company, and on the part of the plaintiff to show that the rules of the com-.

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]